**No. 22-6070**

# United States Court of Appeals for the Sixth Circuit

_____

**LISA KAY GOINS**

*Plaintiff - Appellee*

v.

**SAINT ELIZABETH MEDICAL CENTER, INC.; KROGER CO.; JOHN DOES; JANE DOES; MODERNATX, INC.**

*Defendants*

**TRI-STATE GASTROENTEROLOGY ASSOCIATES; M.D. JOEL M. WARREN**

*Defendants – Appellants*

_____

**DEFENDANTS-APPELLANTS' PRINCIPAL BRIEF**

═══════════════════════

**On Appeal from the U.S. District Court for the Eastern District of Kentucky (Covington Division)**
**No. 2:22-CV-00091**
**(Hon. David L. Bunning, District Judge)**

Teresa Pike Tomlinson
**Hall Booth Smith, P.C.**
1301 1st Ave., Suite 100
Columbus, Georgia 31901
T: (706) 494-3818
ttomlinson@hallboothsmith.com

*Counsel for Defendants-Appellants*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 22-6070 _____    Case Name: Lisa Goins v. Saint Elizabeth Medical Center, Inc., et al

Name of counsel: Teresa Pike Tomlinson _____

Pursuant to 6th Cir. R. 26.1, Joel M. Warren, M.D. _____
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> Joel M. Warren, M.D. is a boardmember and shareholder of Tri-State Gastroenterology
> Associates. Tri-State Gastroenterology Associates, a Kentucky entity, has no parent
> corporation, and no publicly held corporation owns more than 10% of its stock.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> Joel M. Warren, M.D. is a boardmember and shareholder of Tri-State Gastroenterology
> Associates. Tri-State Gastroenterology Associates is insured by The Medical Protecive
> Company, pursuant to a policy administered by MedPro Group. The Medical Proctective
> Company and MedPro Group are both owned by Berkshire Hathaway, Inc., a publicly traded
> company.

---

CERTIFICATE OF SERVICE

I certify that on _____ December 27, 2022 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Teresa Pike Tomlinson _____
_____
_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

## 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a) **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b) **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c) **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 22-6070                    Case Name: Lisa Goins v. Saint Elizabeth Medical Center, Inc., et al

Name of counsel: Teresa Pike Tomlinson

Pursuant to 6th Cir. R. 26.1, Tri-State Gastroenterology Associates
                                            *Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
        identity of the parent corporation or affiliate and the relationship between it and the named
        party:

> Tri-State Gastroenterology Associates, a Kentucky entity, has no parent corporation, and no
> publicly held corporation owns more than 10% of its stock.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
        in the outcome?  If yes, list the identity of such corporation and the nature of the financial
        interest:

> Tri-State Gastroenterology Associates is insured by The Medical Protective Company, pursuant
> to a policy administered by MedPro Group. The Medical Protective Company and MedPro
> Group are both owned by Berkshire Hathaway, Inc., a publicly traded company.

---

CERTIFICATE OF SERVICE

I certify that on _____ December 27, 2022 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Teresa Pike Tomlinson

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES .............................................................. ii

STATEMENT REGARDING ORAL ARGUMENT ............................ vii

I. STATEMENT OF JURISDICTION ..................................................1

    A.    Statement of Subject Matter Jurisdiction ................................1

    B.    Statement of Appellate Jurisdiction ........................................1

    C.    Timeliness of Appeal..............................................................2

    D.    Finality of Order ....................................................................2

II. STATEMENT OF ISSUES ..............................................................3

III. STATEMENT OF THE CASE.........................................................3

    A.    Factual and Statutory Background ..........................................3

    B.    The Goins Action ....................................................................7

IV. SUMMARY OF THE ARGUMENT ...............................................11

V. ARGUMENT AND CITATIONS TO AUTHORITY ........................12

    A.    Standard of Review on Appeal................................................12

    B.    The District Court's Orders.....................................................13

    C.    The PREP Act Governs This Action........................................15

    D.    The District Court Wrongly Limited the Application of the Act to Defendants Moderna and Kroger. ...........................................22

VI. CONCLUSION..............................................................................25

CERTIFICATE OF COMPLIANCE......................................................I

CERTIFICATE OF SERVICE .............................................................II

ADDENDUM ..................................................................................... IV

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............V

# TABLE OF AUTHORITIES

### CASES

*BP P.L.C. v. Mayor and City Council of Baltimore,* 141 S.Ct. 1532 (2021)............................................................................................2

*Bruesewitz v. Wyeth, LLC*, 562 U.S. 223 (2011) ....................................24

*Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009) ........................1

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260 (D.C. Cir. 1995)........................................................................2

*Highmark Inc v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559 (2014)................12

*Hudak v. Elmcroft of Sagamore Hills,* 58 F.4th 845 (6th Cir. 2023)................ vii, 12

*Long v. Bando Mfg. of America, Inc.,* 201 F.3d 754 (6th Cir. 2000) ............ 1, 2, 13

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .............................................1, 2

*Singh v. Rosen*, 984 F.3d 1142 (6th Cir. 2021)........................................13

### STATUTES

21 U.S.C. § 321(h) ................................................................................5

21 U.S.C. § 321(h)(1)(B) .......................................................................5

21 U.S.C. § 351 *et seq.*..........................................................................5

21 U.S.C. § 360c ...............................................................................20

28 U.S.C. § 1291 ..............................................................................1, 2

28 U.S.C. § 1367 .............................................................................1, 12

28 U.S.C. § 1442 ................................................................................1

28 U.S.C. § 1442(a)(1).......................................................................2, 12

28 U.S.C. § 1447(d) .............................................................................2

42 U.S.C. § 247d-6d(a)(1) ................................................. 11, 15, 17, 24

42 U.S.C. § 247d-6d(a)(2)(B) .............................................. 11, 15

42 U.S.C. § 247d-6d(b)(2)(A)..............................................................17

42 U.S.C. § 247d-6d(b)(7) ..................................................................17

42 U.S.C. § 247d-6d(b)(8) ............................................... 9, 12, 24

42 U.S.C. § 247d-6d(b)(9) ..................................................................17

42 U.S.C. § 247d-6d(i)(1) ...................................................................11

42 U.S.C. § 247d-6d(i)(1)(A) ...................................................... 4, 10, 15

42 U.S.C. § 247d-6d(i)(2) ..............................................................7, 17

42 U.S.C. § 247d-6d(i)(7) ......................................................... passim

42 U.S.C. § 247d-6d(i)(7)(A) ...........................................................17

42 U.S.C. § 247d-6d(i)(7)(A)(i)...........................................................7

42 U.S.C. § 247d-6d(i)(7)(A)(i)(II) ......................................................5

42 U.S.C. § 247d-6d(i)(7)(A)(ii)................................................ passim

42 U.S.C. § 247d-6d(i)(7)(B)...........................................................16

42 U.S.C. § 247d-6d(i)(7)(B)(i)...........................................................5

42 U.S.C. § 247d-6d(i)(8) ..............................................................7, 17

42 U.S.C. § 300aa-1, *et seq.*............................................................24

## REGULATIONS AND AGENCY PROCLAMATIONS

21 C.F.R. § 8203(r) ............................................................................5

Declaration Under the Public Readiness and Emergency Preparedness
      Act for Medical Countermeasures Against COVID-19, 85 Fed.
      Reg 15198 (Mar. 17, 2020) ........................................... 3, 4, 16, 24

Fourth Amendment to the Declaration Under the Public Readiness and
      Emergency Preparedness Act for Medical Countermeasures
      Against COVID-19 and Republication of the Declaration, 85
      Fed. Reg. 79190 (Dec. 9, 2020)............................................. passim

HHS, Advisory Opinion 20-02 on the Public Readiness and Emergency
      Preparedness Act and the Secretary's Declaration Under the Act
      (May 19, 2020) ...............................................................................24

HHS, Advisory Opinion 20-03 on the Public Readiness and Emergency
      Preparedness Act and the Secretary's Declaration under the Act
      (Oct. 22, 2020, as modified Oct. 23, 2020) ....................... 6, 16, 17

HHS, Advisory Opinion 20-04 on the Public Readiness and Emergency
      Preparedness Act and the Secretary's Declaration Under the Act
      (Oct. 22, 2020, as modified on Oct. 23, 2023).............................24

HHS, Advisory Opinion 21-01on the Public Readiness and Emergency
      Preparedness Act Scope of Preemption Provision (Jan. 8, 2021) .................24

HHS, Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration Under the Act (Apr. 17, 2020, as modified on May 19, 2020) ......................................24

Second Amendment to the Declaration Under The Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 35100 (June 8, 2020) ...........................5

Sixth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 9516 (Feb. 16, 2021). .............................6

Third Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 52136 (Aug. 24, 2020)............................6

## <u>RULES</u>

FED. R. APP. P. 32(a)(5) ...............................................................................I

FED. R. APP. P. 32(a)(6) ...............................................................................I

FED. R. APP. P. 32(a)(7)(B) ..........................................................................I

FED. R. APP. P. 32(a)(7)(C) ..........................................................................I

FED. R. APP. P. 32(f) ....................................................................................I

FED. R. CIV. P. 4(a)(1)(A) ............................................................................2

## <u>OTHER AUTHORIES</u>

Andrew C. Storm & Linda S. Lee, *Endoscopic Ultrasound-Guided Techniques For Diagnosing Pancreatic Mass Lesions: Can We Do Better?*, WORLD J. OF GASTROENTEROLOGY (last accessed Mar. 3, 2023), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5075543/ .................. 19, 20

Benjamin Tharian, Fotios Tsiopoulos, Nayana George, Salvatore Di Pietro, Fabia Attili, and Alberto Larghi, *Endoscopic Ultrasound Fine Needle Aspiration: Technique And Applications in Clinical Practice*, WORLD J. OF GASTROENTEROLOGY (2012) (last accessed Mar. 3, 2023), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3536850/.........................18

*Esophagogastroduodenoscopy – EGD*, STANFORD MEDICINE | HEALTH CARE (last accessed Mar. 3, 2023), https://stanfordhealthcare.org/medical-tests/e/egd.html...............................19

FDA News Release, FDA Takes Additional Action in Fight Against COVID-19 By Issuing Emergency Use Authorization For Second COVID-19 Vaccine (Dec. 18, 2020) .................................................4

*Insulinoma*, JOHNS HOPKINS MEDICINE (last accessed Mar. 3, 2023), https://www.hopkinsmedicine.org/health/conditions-and-diseases/insulinoma .......................................................................19

*Pancreas Biopsy*, STANFORD MEDICINE | HEALTH CARE (last accessed Mar. 3, 2023) https://stanfordhealthcare.org/medical-conditions/cancer/pancreatic-cancer/pancreatic-cancer-diagnosis/biopsy.html .....................................................................19

*Product Classification*, U.S. FOOD & DRUG ADMINISTRATION (last accessed Mar. 3, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm ...................................................................................20

*Product Classification: Biopsy Needle*, U.S. FOOD & DRUG ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=1828 .......................................................................20

*Product Classification: Endoscopic Ultrasound System, Gastroenterology-Urology*, U.S. FOOD & DRUG ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=2152 .......................................................................20

*Product Classification*: *Gastroscope and Accessories* U.S. FOOD & DRUG ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=1854 .......................................................................20

*Product Classification*: *Instrument, Biopsy, Suction*, U.S. FOOD & DRUG ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=1831 .......................................................................21

*Product Classification*: *Stylet for Catheter, Gastro-Urology*, U.S. FOOD & DRUG ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=1783) .......................................................................21

Rajni Ahlawat, Gilles J. Hoilat, and Albert B. Ross, *Esophagogastroduodenoscopy*, National Library of Medicine, National Center for Biotechnology Information (last visited Jan. 10, 2023), https://www.ncbi.nlm.nih.gov/books/NBK532268/ ......................... 18, 19, 20

Release, U.S. Department of Defense, HHS Accelerates Clinical Trials, Prepares for Manufacturing of COVID-19 Vaccines (Mar. 30, 2020) ...................................................................................................... 4

*Upper Endoscopy*, American Cancer Society (last accessed Mar. 3, 2023), https://www.cancer.org/treatment/understanding-your-diagnosis/tests/endoscopy/upper-endoscopy.html ....................................... 19

## STATEMENT REGARDING ORAL ARGUMENT

This case involves the substantive application of the Public Readiness and Emergency Preparedness ("PREP") Act (42 U.S.C. §§ 247d-6d, 247d-6e) to a physician (and his physician group) assessing, diagnosing, and treating side effects to the COVID-19 vaccine. Not only are vaccines covered countermeasures, but the products and devices utilized to diagnose or treat conditions caused by the COVID-19 vaccine are covered countermeasures under the PREP Act. The District Court erred in failing to recognize that fact resulting in a clear error of law in not dismissing the physician and physician group under the Act just as the vaccine manufacturer and distributor had been dismissed.

This case is distinguished from the circuit court cases, including *Hudak v. Elmcroft of Sagamore Hills,* 58 F.4th 845 (6th Cir. 2023), which relate to PREP Act federal removal jurisdiction because here the District Court had subject matter jurisdiction over this case via other means, to-wit: 28 U.S.C. § 1442(a)(1) (federal officer removal jurisdiction of Defendants Moderna and Kroger) and 28 U.S.C. § 1367 (supplemental jurisdiction, at least, over other Appellants). Accordingly, subject matter jurisdiction was established at the time of the court's ruling on the motions to dismiss. Neither *Hudak* nor other circuit court opinions address the substantive application of PREP Act immunity and preemption for claims relating

to the utilization of countermeasure products and devices in diagnosing and treating vaccine side effects.

Oral argument will permit a thorough vetting of this novel question which effects healthcare providers and claimants in suits throughout the Circuit.

# I. STATEMENT OF JURISDICTION

## A. Statement of Subject Matter Jurisdiction

The District Court exercised jurisdiction over now-dismissed Defendants ModernaTX, Inc. ("Moderna") and The Kroger Co. ("Kroger") pursuant to 1442(a)(1), the federal officer removal statute, and exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Defendants-Appellants Joel M. Warren, M.D. ("Dr. Warren") and Tri-State Gastroenterology Associates ("Tri-State") (collectively "Appellants-Defendants"). *See* Mem. Op. and Order [R. 32], PageID# 535 n.1, and PageID# 538 n.4; Order on Mt. to Alert or Amend [R. 37], PageID# 582-83. Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1367 and 1442.

## B. Statement of Appellate Jurisdiction

Appellate jurisdiction is substantiated under 28 U.S.C. § 1367. *Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 641 (2009); *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754, 758-59 (6th Cir. 2000). Appellate review also is proper under 28 U.S.C. § 1291 as the District Court's denial of Appellants' suit immunity is subject to direct appeal: "[T]he denial of a substantial claim of absolute immunity is an order appealable before final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 524-25 (1985).

Additionally, because Moderna and Kroger asserted federal officer jurisdiction, and the lower court addressed the issue, appellate jurisdiction is proper

under 28 U.S.C. §§ 1442(a)(1) and 1447(d). *See BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S.Ct. 1532, 1536-1540 (2021) (section 1447(d) permits appellate review of the entire district court's remand "order"); *see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1266-67 (D.C. Cir. 1995) (first reviewing propriety of motion to dismiss and then considering the propriety of remand under 28 U.S.C. § 1367), cited favorably on related grounds in, *Long,* 201 F.3d at 761.

## C. Timeliness of Appeal

The District Court's motion to dismiss (and remand) order was entered on December 9, 2022. Am. J. [R. 38] ⁋3. The Notice of Appeal was timely filed on December 9, 2022. *See* FED. R. CIV. P. 4(a)(1)(A); Not. Of Appeal [R. 39].

## D. Finality of Order

The District Court's motion to dismiss (and remand) order is final in that it terminates the controversy. 28 U.S.C. § 1291; *see also Mitchell*, 472 U.S. at 524-25.

## II. STATEMENT OF ISSUES

1) Whether the utilization of United States Food and Drug Administration (FDA) approved products and devices for the diagnosis or treatment of conditions caused by the COVID-19 vaccine are "covered countermeasures" under the PREP Act thereby affording Dr. Warren and Tri-State PREP Act protections.

2) Whether the District Court erred in refusing to apply immunity and defensive "ordinary" preemption to this case in the same fashion as was applied to Defendants Moderna and Kroger and thereby erred is failing to dismiss the claims against Dr. Warren and Tri-State.

## III. STATEMENT OF THE CASE

### A. Factual and Statutory Background

COVID-19 besieged the United States beginning in early 2020, requiring the federal government to coordinate a national response. To that end, the HHS Secretary issued a declaration activating the PREP Act in order to provide a "whole-of-nation" response for combating the COVID-19 pandemic. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg 15198, 15198 (Mar. 17, 2020) ("Declaration") (COVID-19 "constitutes a public health emergency for purposes of [issuing a] Declaration under the PREP Act"); *see also* Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical

Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190, 79191 (Dec. 9, 2020) ("Fourth Amendment") ("[T]here are…substantial federal legal and policy interests, in having a unified whole-of-nation response to the COVID-19 pandemic[.]").

There was no vaccine to mitigate or prevent the impact of the pandemic for nearly a year. Declaration, 85 Fed. Reg. at 15200 (encouraging manufacturers to "create a vaccine" in order to combat a pandemic); *id.* ("Covered Countermeasures are…any vaccine, used to treat…[or] cure…COVID-19"); *see also* Release, U.S. Department of Defense, HHS Accelerates Clinical Trials, Prepares for Manufacturing of COVID-19 Vaccines (Mar. 30, 2020). "[T]he complete clinical picture regarding [COVID-19 was] not fully understood." Declaration, 85 Fed. Reg. at 15198, Col. B. Finally, on December 18, 2020, the FDA granted an Emergency Use Authorization ("EUA") for the Moderna COVID-19 vaccine. *See* FDA News Release, FDA Takes Additional Action in Fight Against COVID-19 By Issuing Emergency Use Authorization For Second COVID-19 Vaccine (Dec. 18, 2020).

A vaccine is a covered countermeasure protected under the PREP Act: "[C]overed countermeasures are any … vaccine[] used to treat, diagnose, cure, prevent, or mitigate COVID–19." Declaration, 85 Fed. Reg. at 15202, Col. A, citing 42 U.S.C. §§ 247d-6d(i)(1)(A) (defining covered countermeasures as including qualified pandemic products), (i)(7) (defining qualified pandemic products). On

June 8, 2020, HHS clarified that COVID-19 countermeasure protections extend to "include qualified products that limit the harm COVID–19 might otherwise cause," such as a negative reaction to the COVID-19 vaccine. Second Amendment to the Declaration Under The Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 35100, 35101, Col. B, (June 8, 2020) ("Second Amendment"), *citing* 42 U.S.C. § 247d-6d(i)(7)(A)(i)(II). Notably, the PREP Act also defines qualified pandemic products to include "a product…used…to ***diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a [vaccine]***." 42 U.S.C. § 247d-6d(i)(7)(A)(ii) (emphases added).[1]

In gearing up for the coming COVID-19 vaccine and to save lives, HHS recognized the need to prepare for "emergency reactions" to the anticipated COVID-19 vaccine. Third Amendment to the Declaration Under the Public Readiness and

---

[1] "Products" as contemplated by the PREP Act definition of "qualified pandemic product" include drugs or devices "approved or cleared under chapter V of the Federal Food, Drug, and Cosmetic Act [("FD&C Act")]." 42 U.S.C. § 247d-6d(i)(7), (i)(7)(B)(i) (incorporating by reference the FD&C Act); *see also* 21 U.S.C. § 351 *et seq.* (the FD&C Act). "Products" as defined by the FD&C Act include "devices." 21 C.F.R. § 8203(r). The PREP Act incorporates the FD&C Act's definition of "device" within its definition of "qualified pandemic" product: "The term 'qualified pandemic or epidemic product' means…a device (as such term is defined by section 201(h) of the [FD&C Act] (21 U.S.C. § 321(h))". *See* 42 U.S.C. § 247d-6d(i)(7). "The term 'device'…means an instrument…machine…or other similar or related article…intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, [or] treatment…of disease in man[.]" 21 U.S.C. § 321(h)(1)(B).

Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 52136, 52139, Col A (Aug. 24, 2020) ("Third Amendment") (anticipating reactions). In October 2020, HHS explained that covered countermeasures include treatments of side effects from the anticipated COVID-19 vaccine. *See* HHS, Advisory Opinion 20-03 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, p. 4 (Oct. 22, 2020, as modified Oct. 23, 2020) ("AO 20-03").[2] For example, the use of epinephrine as the "treatment of choice" for "serious or life-threatening condition[s] that…may be a side effect of vaccine administration" are covered countermeasures under the PREP Act. AO 20-03, p. 3-4. If healthcare providers administered epinephrine to "address [a] severe acute [COVID-19] vaccine reaction[]," the PREP Act would cover healthcare providers affording them immunity from suit and liability for vaccine reaction claims. *Id.*; *see also infra* pp. 16-17.

Thus, America's healthcare providers, such as Dr. Warren and Tri-State, are qualified persons and covered persons under the PREP Act when they utilized FDA approved products or devices to "diagnose, mitigate, prevent, treat, or cure a serious

---

[2] All HHS Advisory Opinions have been adopted repeatedly into the Declaration and are controlling. *See, e.g.*, Fourth Amendment, 85 Fed. Reg. at 79194-95 & n. 5; Sixth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 9516, 9516, Col. C (Feb. 16, 2021).

or life-threatening disease or condition caused by" the COVID-19 vaccine. 42 U.S.C. § 247d-6d(i)(2) (covered person), (i)(7)(A)(i) and (i)(7)(A)(ii) (qualified pandemic products); (i)(8) (qualified person). That is the case here as the Complaint alleges Dr. Warren and Tri-State utilized qualified pandemic (FDA-approved) products/devices in performing an "upper endoscopic ultrasound with fine needle aspiration," an "esophagogastroduodenoscopy," and "pancreatic biopsy" on Ms. Goins in diagnosing and treating the condition caused by the COVID-19 vaccine that she received. *Compare* 42 U.S.C. § 247d-6d(i)(7)(A)(i), (ii), *with* Compl. [R. 1-2], PageID# 39, ¶¶23-24; Third Amendment, 85 Fed. Reg. at 35101 (discussing PREP Act coverage for FDA approved products and devices used to diagnose and treat vaccine reactions); Fourth Amendment, 85 Fed. Reg. at 79196. Appellants also utilized FDA-approved drugs in the process of administering anesthesia during these procedures. Compl. [R. 1-2], PageID# 39, ¶23.

### B. The Goins Action

This action was filed on June 6, 2022, in the Boone Circuit Court of Kentucky. Compl. [R. 1-2]. The Complaint asserts negligence, battery and intentional harm punitive damages claims against Dr. Warren and Tri-State relating to the alleged improper administration or use of PREP Act countermeasures to diagnose and treat

side effect and conditions caused by the Plaintiff-Appellee's COVID-19 vaccination, to-wit:

- Dr. Warren and Tri-State are licensed to "practice medicine in the State of Kentucky." *Id.*, PageID #35-36, ⁋2;

- Moderna, Inc. developed a "transformative vaccination mRNA medicine (COVID-19) to initiate an immune response against Coronavirus Disease." *Id.*, PageID# 37, ⁋9;

- Ms. Goins was administered her first Moderna COVID-19 vaccine on July 3, 2021, and her second on July 31, 2021, both at a Kroger Pharmacy location. *Id.*, ⁋⁋12-13;

- "Following Ms. Goins' second Moderna COVID-19 vaccine her blood glucose levels fluctuated from her standard controlled level." *Id.*, ⁋14;

- "On August 3, 2021 Ms. Goins woke up with a blood glucose level of 217 but it dropped to 48. After several attempts to increase her blood glucose level with no improvement…[Ms. Goins] was admitted to St. Elizabeth Hospital for…evaluation for hypoglycemia and shortness of breath." *Id.*, PageID# 37-38, ⁋15;

- Ms. Goins' initial side effects included "persistent hypoglycemia," ruptured veins due to the "thickness of [her] concentrated glucose," and "abdominal pain [in an] unspecified abdominal location." *Id.*, PageID# 38, ⁋⁋16-17, 22;

- To diagnose and determine the root cause of Ms. Goins' side effects, such as the possibility of an "insulinoma" or tumors located on her pancreas, Dr. Warren performed, "under monitored anesthesia care," an "upper endoscopic ultrasound with fine needle aspiration," an "esophagogastroduodenoscopy," and a pancreatic fine needle biopsy "with a 22-[gauge] Boston Acquire needle." *Id.*, PageID# 39, ⁋23;

- "There was no mass," such as an insulinoma, located on Ms. Goins' pancreas. *Id.*, ⁋⁋23, 25

- Ms. Goins' physicians had allegedly "never seen anything like it" and diagnosed that her side effects were caused by "a reaction to her July 31, 2021 second Moderna COVID-19 vaccine." *Id.* PageID# 38-39, ⁋⁋19, 26;

- Plaintiff claims Ms. Goins suffered injuries and conditions caused by the administration of "a high risk pharmaceutical of transformative vaccine mRNA medicine (COVID-19)." *Id.*, PageID# 51, ⁋37.

Shortly after the Complaint was filed, Moderna and Kroger removed based on federal officer removal and federal question jurisdiction while Dr. Warren and Tri-State removed this action based upon federal question jurisdiction. *See* Moderna Not. of Removal [R. 1], PageID# 4-11, and PageID# 20-24 (federal question jurisdiction); *see also* Warren and Tri-State Not. of Removal [R. 9], PageID# 78-86.

Four Defendants filed Motions to Dismiss, arguing Plaintiff-Appellee Goins' ("Goins") claims are barred under subsections (a)(1) and (b)(8) of the PREP Act. *See generally* Moderna Mot. To Dismiss [R. 12]; Dr. Warren and Tri-State Mot. To Dismiss [R. 15]; Kroger Mot. To Dismiss [R. 16]. On November 9, 2022, the District Court exercised original jurisdiction under the federal officer removal statute to rule on the Motions. *See* Mem. Op. and Or. [R. 32], PageID# 535 n.1, and PageID# 538 n.4. The Court granted the Motions to Dismiss as to Moderna and Kroger. *Id.* The District Court reasoned that Moderna and Kroger "distributed" or "produced" (respectively) the COVID-19 vaccination — a covered countermeasure. *Id.* at PageID# 541-43. The District Court therefore held that Moderna and Kroger were "covered persons" as contemplated by the PREP Act. Thus, the claims against

Moderna and Kroger were "expressly preempted by the PREP Act" and were dismissed. *Id.*

The Court denied Dr. Warren's and Tri-State's Motion under the PREP Act and then declined to retain supplemental jurisdiction. *Id.* The District Court also improperly limited the breadth of "covered countermeasures" to only the COVID-19 vaccine, excluding other approved covered countermeasures. *Compare* Mem. Op. and Or. [R. 32] at PageID# 544-45, *with* 42 U.S.C. § 247d-6d(i)(1)(A), (i)(7)(A)(ii). According to the lower court, the administration of "treatment [to] Ms. Goins *after* she received a vaccine" to treat the side effects of the vaccine did not amount to administering a covered countermeasure. *Id.* at PageID# 544 (emphasis added). That finding is directly contrary to the express terms of the PREP Act. The lower court incorrectly held that because "none of the facts asserted alongside [Goins'] claims make allegations regarding Dr. Warren and Tri-State's prescription, administration, or dispensation of the vaccine…Dr. Warren and Tri-State are not 'covered persons' under the PREP Act[.]" *Id.* at PageID# 546. That holding is erroneous and is due to be reversed.

The District Court then declined to retain supplemental jurisdiction over the claims against Dr. Warren and Tri-State and remanded the case to state court, holding that because "the remaining claims…regard[] the medical treatment [and care] that Ms. Goins received from…Dr. Warren, and Tri-State" *after* Ms. Goins

took the vaccine, such claims belong in Kentucky state court. *Id.* at PageID# 546-47. On November 18, 2022, Dr. Warren and Tri-State filed a Motion to Alter or Amend the District Court's Order, pointing out that the PREP Act expressly requires that covered countermeasures include "qualified pandemic" products, such as the diagnostic and treatment products and devices utilized by Dr. Warren and Tri-State to treat the effects of the COVID-19 vaccine. Mot. To Alter or Amend the Ct.'s Nov. 9, 2022, J. [R. 36], PageID# 577; *see also* 42 U.S.C. § 247d-6d(i)(1)(A), (i)(7)(A)(ii). The Court declined to alter or amend its earlier order.[3] Amended J. [R. 38], PageID# 588. Dr. Warren and Tri-State filed this appeal.

## IV. SUMMARY OF THE ARGUMENT

This action falls under the scope of the PREP Act because it is a "claim for loss" and because it alleges injuries relating to and arising from products and devices utilized to diagnose or treat Ms. Goins' reaction to the COVID-19 vaccine. 42 U.S.C. § 247d-6d(a)(1) ("all claims for loss"); (a)(2)(B) (causal scope of Act), (i)(1) (covered countermeasures include "qualified pandemic" products), (i)(7)(A)(ii)

---

[3] Subsequent to the District Court's November 9, 2022 Order, Dr. Warren and Tri-State filed a Motion for Automatic 30-Day Stay of the Court's Judgment or, in the Alternative, Motion to Recall the Mandate. *See generally* [R. 35] ("Motion to Stay or Recall"). The District Court granted the Motion to Stay or Recall "to the extent that [the Motion] seeks a clarification of the automatic stay under [Federal Rule of Civil Procedure] 62(a)" but denied it in part "to the extent that it seeks a stay pending appeal or a full recall" of the order. Mot. to Alter or Amend the Ct.'s Nov. 9, 2022 J. [R. 36], PageID# 586.

(defining "qualified pandemic" products). Dr. Warren and Tri-State are indistinguishable from defendants Moderna and Kroger in regard to their utilization of covered countermeasures. Given that subject matter jurisdiction existed, the District Court was required to also dismiss Dr. Warren and Tri-State pursuant to PREP Act immunity and defensive "ordinary" preemption. *Id.*, § 247d-6d(a)(1) (suit and liability immunity), (b)(8) (defensive "ordinary" preemption).

This case is distinguished from the recent circuit court PREP Act cases, including *Hudak*. Here Dr. Warren's and Tri-State's PREP Act removal jurisdiction is incidental to the ruling on the Motion to Dismiss because the District Court had subject matter jurisdiction over this case via other means, to-wit: 28 U.S.C. § 1442(a)(1) (Moderna and Kroger's federal officer removal) and 28 U.S.C. § 1367 (Dr. Warren's and Tri-State's supplemental jurisdiction). The court chose to exercise that jurisdiction by ruling substantively on the Motion to Dismiss related to Dr. Warren and Tri-State.

The District Court's order is required to be vacated, and Dr. Warren and Tri-State, like Moderna and Kroger, are due to be dismissed from the action.

## V. ARGUMENT AND CITATIONS TO AUTHORITY

### A. Standard of Review on Appeal

This Court's review of an error of law in the application of the PREP Act is *de novo. Highmark Inc v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014);

*Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021). This Court reviews *de novo* a district court's decision regarding subject matter jurisdiction. *Long*, 201 F.3d at 759.

## B. The District Court's Orders

On November 9, 2022, the District Court found it had federal removal jurisdiction over the claims in this action, including the claims against Dr. Warren and Tri-State. The court chose to exercise that jurisdiction by ruling substantively on the Motion to Dismiss related to Warren and Tri-State. The Court also found that the COVID-19 vaccine was a covered countermeasure and that Moderna and Kroger were covered persons under the PREP Act. Mem. Op. and Order [R. 32], PageID# 540-41. First, the Court found the Moderna vaccine is a covered countermeasure. *Id.* at PageID# 540. Next, it found that the negligence and battery claims arise out of, relate to or result from the COVID vaccine. *Id.* at PageID# 541. Then, the Court found Moderna is alleged to be a "manufacturer," (*id.* at PageID# 542) and Kroger is alleged to be an administrator, (*id.* at PageID# 543), thereby warranting the protections of the PREP Act and requiring dismissal due to the Act's immunity from and preemption of all state law claims. The Court also recognized that it could not have applied the PREP Act or ruled upon a motion to dismiss without first

13

establishing federal court jurisdiction. *See* Order on Mt. to Alert or Amend [R. 37], PageID# 583.

As to Dr. Warren and Tri-State, however, the Court erroneously found they were not covered persons or qualified persons under the PREP Act because, to-wit: "No facts are present in the Complaint to show that Dr. Warren and Tri-State administered, prescribed, or dispensed a vaccine to Ms. Goins." *Id.* at PageID# 543-44; *see also id.* at PageID# 543, 545-55 (Warren and Tri-State did not prescribe, administer, or dispense the vaccine). The lower court's fundamental error is in failing to acknowledge that "countermeasures" expressly include the products and devices used to diagnose and treat adverse reactions to the vaccine. Had the Court correctly defined covered countermeasures as Congress requires, Dr. Warren and Tri-State, like Moderna and Kroger, would have been dismissed under the PREP Act.

The issue then boils down to whether the products and devices Warren and Tri-State are alleged to have utilized are covered countermeasures. If the answer to that issue is "yes," as it is, the District Court's order is due to be reversed, and Dr. Warren and Tri-State are due to be dismissed. Moderna, Kroger, Warren and Tri-State are indistinguishable for purposes of the statutory defenses afforded to them under the PREP Act; yet, the lower court drew a non-existent line between the vaccine and other countermeasures. The District Court erred in doing so.

### C. The PREP Act Governs This Action

PREP Act immunity and defensive preemption apply to "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). Goins' claims of negligence and battery in the utilization of FDA approved diagnostic and treatment products/devices are the very heart of the Complaint, have a "causal relationship with the…use of a covered countermeasure" and thereby reap the benefit of the Act's protections. *Id.*, § 247d-6d(a)(2)(B).

"Covered countermeasures" include "qualified pandemic or epidemic products". *Id.* § 247d-6d(i)(1)(A). A "qualified pandemic" product "is a product … used… or procured…to limit the harm such pandemic or epidemic might otherwise cause"—such as the COVID-19 vaccine or procedures to diagnose or treat any reactions caused by that vaccine. *Id.* § 247d-6d(i)(7)(i)(II). A "qualified product" specifically includes any "product…used…or procured to **diagnose**…[or] **treat…a serious or life-threatening disease or condition** *caused by* **a [harm-limiting, i.e. vaccine] product**," i.e., products used to diagnose or treat conditions caused by the COVID-19 vaccine. *Id.* § 247d-6d(i)(7)(A)(ii) (emphases added). "[The Pandemic and All-Hazards Preparedness Reauthorization Act]…extended the definition of 'qualified pandemic or epidemic products'…covered under a PREP Act Declaration to include products…intended to enhance the…effect of a drug, biological product,

or device used… against adverse events from these products." Declaration, 85 Fed. Reg. at 15198, Col. B. Such products must be FDA-approved or authorized. 42 U.S.C. § 247d-6d(i)(7), (i)(7)(B).[4] The Fourth Amendment confirms that ***"Covered Countermeasures are:…a product…used to…diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a [vaccine]."*** Fourth Amendment, 85 Fed. Reg. at 79196, Col. C (emphases added); *see also* AO 20-03, p. 4 (a drug used to treat "a side-effect of [COVID-19] vaccine administration" is a covered countermeasure).

HHS contemplated a question nearly identical to the one posed by this appeal—determining that "epinephrine, when used to treat a…vaccine reaction, [is] a 'covered countermeasure' within the meaning of the PREP Act." AO 20-03, p. 1. HHS's epinephrine example illustrates when products utilized in the treatment or diagnosis of conditions caused by the administration of a COVID-19 vaccine satisfy the PREP Act's definition of "covered countermeasure." HHS explains:

> CDC recommends that…epinephrine is the treatment of choice for severe acute vaccine reactions involving respiratory or cardiovascular **symptoms**….And, under the PREP Act, "Covered Countermeasures" include qualified products…used…or procured to **diagnose**…*a serious or life-threatening disease or conditions caused by such a…device*….**Epinephrine mitigates or treats a serious or life-threatening conditions that, in some rare instances, may be a side effect of vaccine administration**….The PREP Act would not

---

[4] *See supra* n. 1

[otherwise] cover the administration of to address unrelated respiratory
or cardiovascular symptoms.

AO 20-03, pp. 3-4 (italics in original, bold and underline added). The same reasoning

applies here *See* 42 U.S.C. § 247d-6d(i)(7) (defining qualified pandemic product).

Note that HHS was expressly given the authority to determine the "threats to

health"— i.e., vaccine reactions—for which "countermeasures" would be used. *Id*.

§ 247d-6d(b)(2)(A). Note further that Congress assured such determinations could

not be second guessed by the judiciary but that the Secretary would report directly

to Congress as a check and balance on the decisions made under subsection (b) of

the Act. *Id.* § 247d-6d(b)(7) (judicial review prohibition), (b)(9) (30 day reporting

requirement).

Hence, because the COVID-19 vaccine is a countermeasure product "intended

to prevent or cure COVID-19," any claim of loss related to a product used to

"diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or

condition caused by" the COVID-19 vaccine constitutes a "covered

countermeasure" under the scope of the PREP Act protections and are wholly

protected from suit. *Id*. § 247d-6d(a)(1), (i)(7)(A). Further, "person[s] or entit[ies]

that…administered or dispensed such countermeasure[s]" to combat conditions

caused by the COVID-19 vaccine, like Dr. Warren and Tri-State, are "covered

person[s]" afforded protections under a federal forum by the PREP Act. *See id.*

§ 247d-6d(i)(2), (i)(8).

The language of the Goins Complaint provides that the "products" utilized by Dr. Warren—and by extension, Tri-State Gastroenterology—in diagnosing Ms. Goins' condition resulting from the COVID-19 vaccine can be classified as "qualified pandemic or epidemic products" and, therefore, are covered countermeasures. Prior to and during her hospitalization, Ms. Goins allegedly began experiencing dangerously low and fluctuating blood glucose levels and suffered from abdominal pain as well as ruptured veins due to "[t]he thickness of [her] concentrated glucose." *See* Compl. [R. 1-2], PageID# 37-38, ¶¶13-15, 17, 22. "[T]o determine" (i.e., to diagnose) the root cause and source of Ms. Goins' hypoglycemia and abdominal pain—side effects she alleges to be the result of her COVID-19 vaccination—Dr. Warren performed, "under monitored anesthesia care,"[5] "an upper endoscopic ultrasound with fine needle aspiration,"[6] "an

---

[5]    Rajni Ahlawat, Gilles J. Hoilat, and Albert B. Ross, *Esophagogastroduodenoscopy*, NATIONAL LIBRARY OF MEDICINE, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION (last visited Jan. 10, 2023), https://www.ncbi.nlm.nih.gov/books/NBK532268/ ("Routine endoscopy in…adults [such as an esophagogastroduodenoscopy] is usually performed…using…general anesthesia").

[6] Benjamin Tharian, Fotios Tsiopoulos, Nayana George, Salvatore Di Pietro, Fabia Attili, and Alberto Larghi, *Endoscopic Ultrasound Fine Needle Aspiration: Technique And Applications in Clinical Practice*, WORLD J. OF GASTROENTEROLOGY 532 (2012) (last accessed Mar. 3, 2023), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3536850/ (indicating that an endoscopic ultrasound fine needle aspiration is commonly utilized to detect and diagnose "pancreatic masses").

esophagogastroduodenoscopy,"[7] and "a pancreatic biopsy."[8] *Id.* at PageID# 39, ¶¶ 23-24. The procedures are commonly used to rule out (as Dr. Warren did so rule out) the presence of pancreatic masses such as an insulinoma, a common cause of hypoglycemia,[9] allowing then for a diagnosis of a condition related to or resulting from the COVID-19 vaccine. *See id.*; *see also id.* at PageID #39, ¶25 ("no identifiable mass" was located on Ms. Goins' pancreas).

The products necessary to perform the diagnostic procedures described in Goins' Complaint generally included: (i) endoscopes/gastroscopes,[10] (ii) EUS-FNA

---

[7] *Esophagogastroduodenoscopy – EGD*, STANFORD MEDICINE | HEALTH CARE (last accessed Mar. 3, 2023), https://stanfordhealthcare.org/medical-tests/e/egd.html (indicating "esophagogastroduodenoscopy" or "upper endoscopy" are interchangeable); *Upper Endoscopy*, AMERICAN CANCER SOCIETY (last accessed Mar. 3, 2023), https://www.cancer.org/treatment/understanding-your-diagnosis/tests/endoscopy/upper-endoscopy.html (noting endoscopies are often performed as part as an "endoscopic ultrasound" to "look at" and "treat problems" in the "pancreas").

[8] *Pancreas Biopsy*, STANFORD MEDICINE | HEALTH CARE (last accessed Mar. 3, 2023) https://stanfordhealthcare.org/medical-conditions/cancer/pancreatic-cancer/pancreatic-cancer-diagnosis/biopsy.html (explaining that pancreatic biopsies are often combined with a endoscopic ultrasound-guided fine needle aspiration biopsy "to locate [a] tumor" on the pancreas).

[9] *Insulinoma*, JOHNS HOPKINS MEDICINE (last accessed Mar. 3, 2023), https://www.hopkinsmedicine.org/health/conditions-and-diseases/insulinoma (stating that "insulinomas can cause hypoglycemia").

[10] *See Ahlawat*, *supra* n.5 (stating esophagogastroduodenoscopies require the use of a "gastroscope"); Andrew C. Storm & Linda S. Lee, *Endoscopic Ultrasound-Guided Techniques For Diagnosing Pancreatic Mass Lesions: Can We Do Better?*, WORLD J. OF GASTROENTEROLOGY (last accessed Mar. 3, 2023), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5075543/ (pancreatic biopsies

needles,[11] (iii) an ultrasound device,[12] (iv) stylets,[13] (iv) suction devices,[14] and (v)

"anesthesia"[15]—all of which are FDA-approved drugs or devices pursuant to the

FD&C Act.[16] Being FDA-approved, the subject "devices" are "qualified pandemic

---

require the positioning of a "scope"); *Tharian*, *supra* n. 6 (endoscopic ultrasound fine needle aspiration procedures require "curvilinear echoendoscopes").

[11] *See Storm*, *supra* n.10 (pancreatic biopsies require the "selection of [a Fine Needle Aspiration] needle"); *Tharian*, *supra* n.6.

[12] *See Tharian*, *supra* n.6 (discussing "endoscopic **ultrasound** fine needle aspiration", a procedure performed on Ms. Goins (*see* Compl. [R. 1-2], PageID# 39, ⁋ 23)) (emphasis added).

[13] *Storm*, *supra* n.10.

[14] *Id*.

[15] *See Ahlawat*, *supra* n.5.

[16] The FDA provides a database detailing the classification of all approved medical devices. *Product Classification*, U.S. FOOD & DRUG ADMINISTRATION (last accessed Mar. 3, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm. The classifications of FDA approvals for the Goins devices are:

- Gastroscope: Class II;
- Biopsy Needles for Gastroenterology/Urology: Class II;
- Endoscopic Ultrasound System, Gastroenterology-Urology: Class II;
- Stylet for Catheter, Gastro-Urology: Class I;
- Instrument, Biopsy, Suction, Gastroenterology/Urology: Class II.

*See also* 21 U.S.C. § 360c (discussing the classification system of medical "devices" intended for human use); *Product Classification: Biopsy Needle*, U.S. FOOD & DRUG ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=1828; *Product Classification: Endoscopic Ultrasound System, Gastroenterology-Urology*, U.S. FOOD & DRUG ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=2152; *Product Classification*: *Gastroscope and Accessories* U.S. FOOD & DRUG ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=1854; *Product Classification*: *Instrument, Biopsy, Suction*, U.S. FOOD & DRUG

and epidemic" "products" and "devices," which are identified in the PREP Act as constituting a "covered countermeasure." 42 U.S.C. § 247d-6d(i)(7) (defining "qualified pandemic or epidemic product").

Ms. Goins' physicians diagnosed the cause of her condition was a "reaction to her…second Moderna COVID-19 vaccine." Compl. [R. 1-2], PageID# 38-39 ¶¶19-20, 26. The Complaint avers that the vaccine was the determined root cause of Ms. Goins' original hypoglycemia and abdominal pain as those symptoms first arose *four days after* Ms. Goins' second vaccination but *before* Dr. Warren administered any treatment to Ms. Goins. *See* Compl. [R. 1-2] PageID# 37, ¶¶13-14 (Ms. Goins received her second vaccine on July 31, 2021, and began experiencing side effects from the vaccine on August 3, 2022), PageID# 39, ¶26 ("After many tests were performed [by Dr. Warren] and none resulted in a conclusive diagnosis, the doctors state it could have been a reaction to her…second Moderna COVID-19 vaccine."). Goins provides no alternative root cause for the onset of her hypoglycemia and abdominal pain. *See generally id.*; *see also id.* at PageID# 39, ¶30 (alleging Kroger committed battery against Goins by performing a high risk procedure of injecting a

---

ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=1831; *Product Classification*: *Stylet for Catheter, Gastro-Urology*, U.S. FOOD & DRUG ADMINISTRATION (last visited Jan. 11, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfpcd/classification.cfm?id=1783).

"transformative vaccine" that was contraindicated for Ms. Goins' medical condition), PageID# 40 ⁋37 (alleging Moderna committed battery against Goins by "distributing a high risk pharmaceutical" (i.e. the vaccine) that was contraindicated for Goins). Alternative potential conditions were evaluated but ruled out, leading physicians to diagnose Ms. Goins' symptoms were caused by the COVID-19 vaccination. *See id.* at PageID# 39, ⁋⁋ 23-24.

In short, Ms. Goins experienced conditions after receiving her second Moderna COVID-19 vaccine. *Id.* at PageID# 37-38, ⁋⁋13-16. Dr. Warren, then, utilized FDA-approved products to "diagnose" and/or "mitigate" these conditions. *Id.* at PageID# 39, ⁋26. Dr. Warren "used" and/or "procured" products "to diagnose…[or] treat…a serious or life-threatening disease or condition caused by a [pandemic or epidemic harm-limiting] product"—the COVID-19 vaccine. *See* 42 U.S.C. § 247d-6d(i)(7)(A)(ii); Fourth Amendment, 85 Fed. Reg. 79196, Col. C.

Goins alleges the administration or use of covered countermeasures by a covered persons and has subjected her claims to the PREP Act.

### D. The District Court Wrongly Limited the Application of the Act to Defendants Moderna and Kroger.

The District Court correctly found the PREP Act allows for immunity and defensive preemption in its Order on Motion to Dismiss. *See* Mem. Op. and Order [R. 32], PageID# 541-46 (granting Moderna's and Kroger's Motions to Dismiss and denying Dr. Warren's and Tri-State's Motion pursuant to the PREP Act). It

necessarily then correctly found that the negligence, battery and intentional harm punitive damages claims fell within the scope of the PREP Act. *See id.* at PageID# 542-43 (dismissing Ms. Goins' "state law battery and negligence claims" against Moderna and Kroger); *see also id.* at PageID# 546 (noting the claims against Dr. Warren and Tri-State are state law "negligence, battery, and vicarious liability" claims). The court erred, however, in limiting its holding and dismissal to Defendants Moderna and Kroger only.

Once a claim, such as the claims against Dr. Warren and Tri-State, falls within the scope of the Act, the covered person sued is entitled to suit and liability immunity as well as defensive "ordinary" preemption.

> (a)(1) Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

***

> (b)(8) During the effective period of a declaration under subsection (b)…no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—

> (A) is different from, or is in conflict with, any requirement applicable under this section; and

> (B) relates to the…use…or administration by qualified persons of the covered countermeasures under this section or any other provision of this chapter, or under the [FD& C Act.]

23

42 U.S.C. § 247d-6d(a)(1), (b)(8). These are the grounds upon which the District Court granted Moderna and Kroger's Motions to Dismiss and should have also granted those motions filed by Dr. Warren and Tri-State. *See* Mem. Op. and Order [R. 32], PageID# 538-40; *see also Bruesewitz v. Wyeth, LLC*, 562 U.S. 223, 253 (2011) (while majority finds the lesser language of the National Childhood Injury Vaccine Act of 1986, 42 U.S.C. § 300aa-1, *et seq.*, defensively preempts state law claims, the dissent notes the PREP Act language is stronger). Such broad immunity and preemption nullifies all state claims. Declaration, 85 Fed. Reg. at 15202.[17]

As the District Court says, the application of this statutory immunity and preemption depends on whether the Defendants are "covered persons" taking part in "covered countermeasures". Mem. Op. and Order [R. 32], PageID# p. 539. But the court gets it wrong in failing to extend the applicable definition of "countermeasures" to include "qualified pandemic" products" and the FDA-approved products and devices alleged in the Complaint to have been used by Dr. Warren and Tri-State.

---

[17] "PREP Act immunity must be read in light of the PREP Act's broad, express-preemption provision." *See* HHS Advisory Opinion 21-01, pp. 1-2 (Jan. 8, 2021). Indeed, HHS refers six times to the broad applicability of immunity from state law claims, (HHS AO 20-01, pp. 2, 4, 7; HHS AO 20-04, pp. 1-2), and eight times to the "broad" applicability of the PREP Act's preemption of state law claims, (HHS AO 21-01, pp. 1-2; HHS AO 20-02, pp. 4-5 (May 19, 2020); HHS AO 20-04, p. 3).

## VI. CONCLUSION

WHEREFORE, for all the within and foregoing reasons, the District Court's remand order is erroneous. Said Order is due to be reversed as to Dr. Warren and Tri-State and a dismissal is required as Congress directed.

Respectfully submitted this 13th day of March, 2023.

**HALL BOOTH SMITH, P.C.**

*/s/  Teresa Pike Tomlinson*
Teresa Pike Tomlinson
1301 1st Ave., Suite 100
Columbus, Georgia 31901
T: (706) 494-3818
ttomlinson@hallboothsmith.com

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Fed. R. App. P. 32(a)(7)(C), the undersigned counsel hereby certifies the following:

(i)     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,566 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

(ii)    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 with size 14, Times New Roman type style.

Respectfully submitted this 13th day of March, 2023

**HALL BOOTH SMITH, P.C.**

*/s/  Teresa Pike Tomlinson*
Teresa Pike Tomlinson
1301 1st Ave., Suite 100
Columbus, Georgia 31901
T: (706) 494-3818
ttomlinson@hallboothsmith.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2023, I caused a copy of the foregoing

**Defendants-Appellants' Principal Brief** to be served upon the following attorneys

by filing said document via email and with the CM/ECF system to the following:

Anthony Dominick Romeo
DETERS LAW
5247 Madison Pike
Independence, KY 41051
dromeo@ericdeters.com
*Counsel for Plaintiff*

Alan J. Statman
STATMAN, HARRIS, EYRICH LLC
35 E. Seventh Street, Suite 315
Cincinnati, OH 45202
ajstatman@statmanharris.com
*Counsel for Plaintiff*

Cathy Stickles
DLB LAW
109 E. Fourth Street
Covington, KY 41011
cstickles@dbllaw.com
*Counsel for Defendant, Saint Elizabeth Medical Center*

Emma Rose Gripshover
DRESSMAN BENZINGER LAVELLE P.S.C. - COVINGTON
109 E. Fourth Street
Covington, KY 41011
egripshover@dbllaw.com
*Counsel for Defendant, Saint Elizabeth Medical Center*

[continued on next page]

Lori E. Hammond
FROST BROWN TODD LLP - LOUISVILLE
400 W. Market Street
Suite 3200
Louisville, KY 40202
lhammond@fbtlaw.com
*Counsel for Defendant, Modernatx, Inc.*

Mara Cusker Gonzalez
DECHERT LLP - NY
1095 Avenue of the Americans
Three Bryant Park
New York, NY 10036-6797
mara.cuskergonzalez@dechert.com
*Counsel for Defendant, Modernatx, Inc.*

Sara B. Roitman
DECHERT LLP - IL
35 W. Wacker Drive
Suite 3400
Chicago, IL 60601-1608
sara.roitman@dechert.com
*Counsel for Defendant, Modernatx, Inc.*

Charles L. Hinegardner
BARRON PECK BENNIE & SCHLEMMER - CINCINNATI
3074 Madison Road
Cincinnati, OH 45209
clh@bpbslaw.com
*Counsel for Defendant, The Kroger Co., Inc.*

Respectfully submitted,

**HALL BOOTH SMITH, P.C.**

*/s/  Teresa Pike Tomlinson*
Teresa Pike Tomlinson
1301 1st Ave., Suite 100
Columbus, Georgia 31901
T: (706) 494-3818
ttomlinson@hallboothsmith.com

# <u>ADDENDUM</u>

(Pursuant to 6 Cɪʀ. R. 28(b)(1)(A)(i) and R. 30(g)(1))

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rules 28(b)(1)(A)(i) and 30(g)(1), Defendants-Appellants have designated the following docket entries from the Eastern District of Kentucky No. 2:22-CV-00091.

| RE# | Description | PageID# Range |
|---|---|---|
| 1 | Notice of Removal by Modernatx, Inc. (July 18, 2022) | 1-60 |
| 1-2 | Exhibit A To Notice of Removal Complaint With Jury Demand (July 22, 2022) | 29-54 |
| 1-4 | Exhibit D to Notice of Removal: Advisory Opinion 20-01(May 19, 2020) | 77-85 |
| 1-5 | Exhibit E1 to Notice of Removal: HHS Response Letter  (Aug. 14, 2022) | 86-87 |
| 1-6 | Exhibit E2 to Notice of Removal: HHS Guidance of COVID-19 Screening Tests at Nursing Homes, Assisted, Living Facilities, Long-Term-Care Facilities, and other Congregate Facilities, Long Term-Care | 88-90 |
| 1-7 | Exhibit F to Notice of Removal: Advisory Opinion 20-04 (Oct. 23, 2022) | 91-981 |
| 1-8 | Exhibit G to Notice of Removal: Fourth Amendment to the Declaration under the PREP Act, 85 Fed. Reg. 79190 (Dec. 3, 2020) | 99-127 |
| 1-9 | Exhibit H to Notice of Removal: Advisory Opinion 21-01 (Jan. 8, 2021) | 128-132 |
| 1-10 | Exhibit I to Notice of Removal: Fifth Amendment to the Declaration Under the PREP Act, 86 Fed. Reg. 7872 (Feb. 2, 2021) | 133-137 |

| 1-11 | Exhibit J to Notice of Removal: Statement of Interest of the United States (Jan. 19, 2021) | 138-152 |
|------|------|------|
| 9 | Notice of Filing Removal by Tri-State Gastroenterology Associates, Joel M. Warren (July 20, 2022) | |
| 10 | Answer to Complaint filed by Saint Elizabeth Medical Center, Inc. (July 20, 2022) | 260-278 |
| 11 | Notice of Filing Removal by Saint Elizabeth Medical Center, Inc. (July 22, 2022) | |
| 12 | Motion to Dismiss by Modernatx, Inc. (July 25, 2022) | 396-426 |
| 14 | Motion to Dismiss by The Kroger Co. (July 27, 2022) | 429-437 |
| 15 | Motion to Dismiss for Lack of Jurisdiction by Tri-State Gastroenterology Associates, Joel M. Warren (July 27, 2022) | 438-472 |
| 16 | Motion to Dismiss by The Kroger Co. with Modified Text to Take Out Referral Language (July 29, 2022) | 473-492 |
| 32 | Memorandum Opinion And Order (Nov. 9, 2022) | 532-548 |
| 35 | Motion to Stay by Tri-State Gastroenterology Associates, Joel M. Warren (Nov. 18, 2022) | 551-573 |
| 36 | Motion to Alter Judgment by Tri-State Gastroenterology Associates (Nov. 18, 2022) | 574-580 |
| 37 | Order Granting in Part and Denying in Part Motion for to Stay (35) and Denying Motion to Amend or Alter (36) (Nov. 29, 2022) | 581-587 |
| 38 | Amended Judgment Remanding Case (Nov. 29, 2022) | 588-589 |
| 39 | Notice of Appeal | 590-618 |